UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROBERT LEAF, DEBBIE CARR, SCOTT LEWIS,<br><br>               Plaintiffs,<br><br>vs.<br><br><br>BEAR COUNTRY USA, INC.,<br><br>               Defendant. | 5:23-CV-05013-CCT<br><br><br>ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT<br><br>DOCKET NO. 30 |

**INTRODUCTION**

This personal injury lawsuit is before the court on plaintiffs' complaint founded on diversity of citizenship of the parties and an amount in controversy exceeding $75,000. Docket No. 1 at 1. Robert Leaf was allegedly injured when he sat on a bench which tipped over backwards at the premises of defendant Bear Country USA, Inc. Id. at 2. Bear Country now moves to exclude the testimony of plaintiffs' expert, Dr. Anthony Andre. Docket No. 30. Plaintiffs resist the motion. Docket No. 40. The district judge, the Honorable Camela Theeler, referred Bear Country's motion to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). Docket No. 47.

**FACTS**

The following facts are taken from plaintiffs' complaint and the parties' briefs on this motion.  On August 10, 2020, plaintiffs were business invitees of Bear Country.  Plaintiff Robert Leaf and Debbie Carr are spouses.  Plaintiff Scott Lewis is Debbie's son and Robert's stepson.

Robert sat down on a bench provided by Bear Country that tipped over backward, injuring him.  He asserts a claim for negligence against Bear Country.  Debbie and Scott assert claims for loss of consortium.

Plaintiffs hired Dr. Andre as an expert in human factors and ergonomics. Dr. Andre provided a written report (Docket No. 41-1) and Bear Country's counsel took Dr. Andre's deposition (Docket No. 41-2).

Dr. Andre has both undergraduate and graduate degrees in Human Factors and Ergonomics.  Docket No. 41-1 at 2.  He is board-certified as a Professional Ergonomist.  Id.  He is a Professor of Human Factors and Ergonomics at San Jose State University's Graduate Master's degree program. Id.  He is a past president and elected fellow of the Human Factors and Ergonomics Society, a fellow of the International Ergonomics Association, and editor in chief of the journal Human Factors in Healthcare as well as a contributing editor to Ergonomics in Design.  Id. at 3.

In preparation for formulating his opinion, Dr. Andre reviewed a video of the incident involving Robert, Bear Country's discovery documents, plaintiffs' discovery documents, internal Bear Country company emails, Bear Country's

2

answer to plaintiffs' complaint, the manual for the bench on which Robert was injured, and the depositions of four individuals: Casey, Giacometto, Reitzel, and Sjovall.  Id.

Dr. Andre analyzed the incident involving Robert by evaluating Robert's conduct, the bench, and the context.  Id. at 8.  Dr. Andre found Robert's actions in approaching and sitting on the bench to be normal, foreseeable behaviors that did not cause the accident.  Id. at 10.

Dr. Andre noted that the bench was lightweight—made of aluminum and plastic—and opined that the lightweight nature of the bench should have alerted Bear Country that such a bench needed to be anchored to the ground. Id. at 10.  Dr. Andre noted that, prior to sitting on the bench, Robert and Scott brushed up against the bench and the bench legs lifted up from this "apparently light inadvertent contact."  Id. at 11.

Dr. Andre also noted that the seat of the bench inclined toward the back support, which produced a fulcrum point at the rear which brought the front legs of the bench up off the ground when Robert attempted to sit down.  Id. at 12.  Dr. Andre stated that this fulcrum effect also should have alerted Bear Country that the bench needed to be anchored to the ground.  Id.

Finally, Dr. Andre noted that the feet of the bench had no holes in them which would have allowed for anchoring, which should have alerted Bear Country that the bench was not suitable for public use.  Id. at 13.  Even without holes in the feet of the bench, Dr. Andre noted and provided examples

of numerous other devices that could have been used to anchor the bench.  Id.
at 13-15.

Bear Country seeks to exclude Dr. Andre's opinion and testimony, arguing that they do not meet the requirements of Federal Rule of Evidence 702.  Docket No. 31 at 4-6.  Plaintiffs argue Dr. Andre's opinion is admissible and Bear Country's criticisms go to the weight that the jury should assign to the testimony, not its admissibility.  Docket No. 40 at 3.

## DISCUSSION

### A.   Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admission of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"When it comes to the admission of expert testimony under the Federal Rules of Evidence, a trial judge has a gatekeeping responsibility to 'ensure that

4

an expert's testimony rests on a reliable foundation and is relevant to the task at hand.'" Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 714-15 (8th Cir. 2001) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)) (cleaned up). "To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence . . . that the expert is qualified to render the opinion[.]" Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757-58 (8th Cir. 2006).

An expert must possess the "knowledge, skill, experience, training or education sufficient to assist the trier of fact," but that "standard is satisfied when the expert's testimony 'advances the trier of fact's understanding to any degree.'" Friedberg v. Chubb & Son, Inc., 832 F. Supp. 2d 1049 (D. Minn. 2011), aff'd, 691 F.3d 948 (8th Cir. 2012) (quoting Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100-01 (8th Cir. 2006)). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id.

Federal Rule of Evidence 702 "reflects an attempt to liberalize the rules governing the admission of expert testimony." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (quotation omitted). Rule 702 "is one of admissibility rather than exclusion." Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991). "[C]ases are legion that, correctly, under Daubert, call for the liberal admission of expert testimony." Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014).

Plaintiffs assert that Dr. Andre is qualified by specialized knowledge to render an opinion in this case, that his opinions are reliable, and that his opinions will assist the jury.  Docket No. 40 at 5-7.  Bear Country appears to concede that Dr. Andre is qualified, but contests whether his opinions are reliable and will assist the jury.  Docket No. 42 at 2-5.  The court will address each contention individually.

**B.    Reliability of Dr. Andre's Opinion**

Bear Country first asserts that Dr. Andre's opinion is not reliable because he provides mere assertions rather than demonstrating a reasonable basis for them.  Docket No. 31, at 4.  "If 'there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered,' the court may exclude the testimony as unreliable, as 'nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Andrews v. Rosewood Hotels & Resorts, LLC, 575 F. Supp. 3d 728, 734 (N.D. Tex. 2021) (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

Specifically, Bear Country says that Dr. Andre does not "identify a single ergonomics study, peer-reviewed article, guideline, industry standard, or empirical principle to support his conclusions," "cites no work from human-factors literature addressing the stability, weight, or anchoring of outdoor benches," "performs no measurements, no testing of any kind, no exemplar comparison, no load or force analysis, no slip-resistance analysis, and no

6

assessment of any reasonably foreseeable use or misuse." Id. at 3-4.  In short, Bear Country claims that "nothing in [Dr. Andre's] report reflects the application of any reliable, testable method."  Id. at 4.

Plaintiffs respond that Dr. Andre reliably applied a human-factors analysis to the facts of this case, and that courts routinely find human factor expert testimony to be admissible.  Docket No. 40, at 8-9 (collecting cases). Dr. Andre reviewed relevant materials, evaluated the specific movement shown on the video, and compared that movement against the range of behavior considered ordinary and foreseeable for members of the public using a bench in that setting.  Id. at 9.  He also considered the bench's features, such as its lightweight design and rearward-sloping seat and lack of anchoring.  Id. Plaintiffs contend that this demonstrates that Dr. Andre's opinion is not a bare conclusion, but rather a reasoned application of human-factors methodology to the facts of this case.  Id. at 10.

The court finds that Dr. Andre's report is more than a mere *ipse dixit*.  It applies a field of expertise, human factors and ergonomics,[1] to the facts of Robert's accident.  Dr. Andre considered the relevant facts: plaintiffs' interactions with the bench, whether those interactions were normal and

---

[1] Human factors analysis "is a recognized analytical approach that is applied in a variety of contexts and may yield legitimate insights as to the hazards that particular products and situations . . . may pose in light of predictable human behavioral patterns."  Mihailovich v. Laatsch, 359 F.3d 892, 919 (7th Cir. 2004).  As plaintiffs point out, courts have routinely recognized human factors and ergonomics as a field that one can be qualified to render an expert opinion in.  See Docket No. 40, at 8 n.1 (collecting cases).  See also Berg v. Johnson & Johnson, 940 F. Supp. 2d 983, 999-1000 (D.S.D. 2013).

foreseeable, and factors that made the bench unsafe for public use, such as its lightweight design, incline, and lack of anchoring.  Docket No. 29-5.  Bear Country's argument for why Dr. Andre's report is unreliable—that "[h]is conclusions are not the product of any articulated principle or method" and "are not grounded in sufficient facts or data"—is refuted by Dr. Andre's expert report.

Courts have denied motions to exclude expert testimony under similar circumstances.  In Michaels v. Mr. Heater, Inc., 411 F. Supp. 2d 992, 999 (W.D. Wis. 2006), a court allowed testimony from an expert in human factors engineering even though "he performed no studies or tests in conjunction with this case."  The court reasoned that "the theories and methods upon which [the expert] relies are recognized by the engineering community" and could therefore be helpful to the jury.  Id. at 999-1000.  Dr. Andre likewise relied upon theories and methods recognized by the human factors analysis community, indicating that his testimony is reliable.

Another court addressed an argument similar to Bear Country's in Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp., 624 F. Supp. 3d 808 (W.D. Ky. 2022).  There, a party sought to exclude the opinions of an expert witness whether a device could be reverse engineered because the expert did not perform hands-on testing or have extensive experience related to the machinery at issue.  Id. at 816-17.  The court disagreed with the opposing party's claim that the expert had "merely offered his unverified word—his *ipse dixit*—that something is so."  Id. at 817.  The court reasoned that the expert's

"theory that [the device] can be reverse engineered does not have to be tested to be admissible." Id.  See also Jacobs v. Tricam Indus., 816 F. Supp. 2d 487, 493 (E.D. Mich. 2011) ("Furthermore, testing is not required in every case, particularly where, as here, the expert conducted an examination of the physical evidence.").

The court finds that Dr. Andre's expert opinion is sufficiently reliable to be admitted.  Dr. Andre's report applies an accepted academic discipline to the facts of this case.  Any further disputes about the reliability of Dr. Andre's expert opinion go to weight of his testimony, not its admissibility.

**C.      Assistance of Dr. Andre's Opinion to the Jury**

Bear Country also argues that Dr. Andre's opinions "do not assist the trier of fact, because the issues he raises—such as whether a freestanding bench might move if pushed—are easily understood by any lay juror without specialized knowledge." Docket No. 31, at 5.  See United States v. Watkins, 66 F.4th 1179, 1185 (8th Cir. 2023) ("When a layperson juror would be able to make a common sense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous.") (quotation omitted).

The court disagrees with Bear Country's conclusion.  Dr. Andre's report touches on topics not within a lay juror's knowledge.  For instance, Dr. Andre comments on the lightweight, inclined, and unanchored nature of the bench, and how that is incompatible with a bench designated for public use.  Docket

No. 41-1.  Dr. Andre also opines on Robert's behavior and whether it comported with reasonable and foreseeable behavior of the public.  Id.  These are not topics "easily understood by any lay juror without specialized knowledge."

This case is similar to Nelson v. Am. Honda Motor Co., 623 F. Supp. 3d 618, 622 (W.D. Pa. 2022).  There, a minor died in an accident while driving a three-wheel vehicle.  Plaintiff, the minor's mother, sought to exclude "scientific evidence that a helmet lessens head injuries" "because lay people already know this to be true."  Id. at 622.  More specifically, plaintiff challenged the majority of an expert witness's conclusions "as lay opinions not needing scientific explanation."  Id.  She claimed that the testimony would "not be helpful because lay people already know that wearing a helmet, like wearing a seatbelt, is safer than not wearing one."  Id.  The court rejected this argument, calling it an "oversimplification."  Id.  The court reasoned that "[w]hile the average juror knows that helmets prevent or lessen head injuries generally, expert testimony will be helpful to the jury *in this case* to evaluate the effects of *the available helmet on* [the minor's] *head injury*."  Id.  Accordingly, the court denied the Daubert motion to exclude the expert witness who offered testimony as to the impact a helmet would have had in the accident.  Id. at 627.

The same is true here. While a lay juror can easily understand "whether a freestanding bench might move if pushed," Docket No. 31, at 5, Dr. Andre's expert report offers far more analysis.  Dr. Andre's report addresses the foreseeability of the accident based on the bench's design, normal behavior

10

when sitting, and whether Robert's behavior comported with that standard. Dr. Andre's analysis is supported by his expertise of more than 30 years of studying human factors and ergonomics.  It therefore goes beyond a "common sense" analysis and would be of assistance to the jury.

## CONCLUSION

Based on the foregoing facts, law and analysis, it is hereby

ORDERED that Bear Country's motion to exclude the expert opinions of Dr. Anthony Andre [Docket No. 30] is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained.  FED. R. CIV. P. 6(b)(1), 72(a).  Failure to file timely objections will result in the waiver of the right to appeal this ruling.  United States v. Becerra, 73 F.4th 966, 972-73 (8th Cir. 2023).  Objections must be specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).

DATED this 16th day of July, 2026.

BY THE COURT:

VERONICA L. DUFFY

United States Magistrate Judge