UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ROBERT LEAF, DEBBIE CARR, SCOTT LEWIS, <br><br> Plaintiffs, <br><br> vs. <br><br> BEAR COUNTRY USA, INC., <br><br> Defendant. | 5:23-CV-05013-CCT <br><br><br> **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Bear Country USA, Inc., defendant, moves for summary judgment, asserting that it is entitled to summary judgment because there is no genuine issue of material fact regarding its negligence and punitive damages in this matter. Dockets 27 and 28. The plaintiffs, Robert Leaf, Debbie Carr, and Scott Lewis, oppose this summary judgment motion. Docket 37.

For the following reasons, Bear Country's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

On August 10, 2020, Robert Leaf was injured while visiting Bear Country's park as he sat down on one of its benches alongside the Wildlife Loop walkway. Docket 33 ¶¶ 1–4; Docket 38 at 2. He had guided his disabled, blind, and non-verbal stepson, Scott Lewis, over toward the bench to rest. Docket 33 ¶ 2; Docket 5 ¶ 6. As Leaf positioned himself in front of the bench to

1

sit down, the bench slid slightly back. *See* Docket 29-1. Then as he sat down, the bench tipped over backwards, causing Leaf to fall backward onto the grass. *Id.* Leaf alleges he was injured as a result of this fall. Docket 33 ¶ 4; Docket 38 at 2.

The bench was lightweight and not secured to the ground. Docket 29-1 (video capturing the entirety of Leaf's fall and showing Debbie Carr, Leaf's wife, sliding the bench without difficulty to help Leaf up); Docket 38 at 2. It was placed on concrete that was decoratively stamped to look like bricks along the side of the main Wildlife Loop walkway. Docket 38 at 2; Docket 39-2 at 2–3. This area had ridges in between the stamped bricks, making it not as smooth or even as the main walkway. Docket 39-2 at 2–3; Docket 38 at 2. The bench's rear legs were also adjacent to the grass on the sides of the walkway. *See generally* Docket 29-1. Bear Country had placed this bench and others like it along the walkway in this location intentionally. Docket 39-5 at 2–3 (noting that is the "normal place for" these benches).

Bear Country has used this same type of bench for about 17 years, inspects them each season, and regularly moves them around. Docket 39-5 at 4–6. It does not know of anyone else injured from these benches despite "over four million visitors at the park" in the past 17 years. Docket 33 ¶¶ 5, 7.

Leaf, Carr, and Lewis brought their lawsuit against Bear Country on March 17, 2023, *see* Docket 1, later amending their complaint on May 4, 2023, *see* Docket 5. They assert claims of negligence and loss of consortium against Bear Country and seek damages, including punitive damages. *See id.* On

March 26, 2026, Bear Country filed the present motion for summary judgment. Docket 27.[1]

**LEGAL STANDARD**

Notably, Bear Country cites South Dakota precedent for what it claims is the appropriate summary judgment standard. Docket 28 at 2. However, the standard for summary judgment is considered a matter of procedure, not of substantive law. *See Shady Grov Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) ("[A] Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping."). Thus, the *Erie* doctrine does not apply here, and this Court's summary judgment standard is governed by Federal Rule of Civil Procedure 56. *Id.*

Under Rule 56(a), summary judgment is appropriate and may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed material fact is "genuine" when the evidence produced "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is considered

---

[1] Bear Country argues that the plaintiffs cannot rely on their expert witness in resisting summary judgment because the expert's opinions should be excluded. Docket 28 at 8–10. However, Bear Country also filed a separate motion to exclude this expert witness, which was referred to and denied by Magistrate Judge Duffy. Dockets 30, 47, and 50. Regardless, the Court does not rely on the plaintiffs' expert's opinions in this order, and therefore, it is unnecessary to address whether the plaintiffs can rely on their expert witness when resisting summary judgment.

"material" if it "might affect the outcome of the suit under the governing law."

*Id.*

"Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Foster v. Ethicon, Inc.*, 529 F. Supp. 3d 992, 996 (D.S.D. 2021). "The moving party can meet this burden by presenting evidence that there is no genuine dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof." *Finneman v. United States Dep't of Ag.*, No. 5:23-CV-05034-KES, 2024 WL 5158473, at *4 (D.S.D. Dec. 17, 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

If "the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by 'citing to particular parts of materials in the record' or 'by showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *Foster*, 529 F. Supp. 3d at 996 (omission in original) (quoting Fed. R. Civ. P. 56(c)(1)). A court views the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Finneman*, 2024 WL 5158473, at *5; *Foster*, 529 F. Supp. 3d at 997; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

However, "[a] party opposing a properly supported motion for summary judgment 'may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would

permit a finding in his favor, without resort to speculation, conjecture, or fantasy.'" *Foster*, 529 F. Supp. 3d at 997 (citation omitted); *see also Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). On a summary judgment motion, a court does not determine the weight and credibility of the evidence; rather, it determines whether a sufficient factual dispute exists so the issue may proceed to a jury. *Anderson*, 477 U.S. at 249–50.

## DISCUSSION

**I.    Whether there is a genuine dispute of material fact that the bench was a dangerous condition and whether Bear Country had knowledge that the bench constituted a dangerous condition.**

Bear Country argues there was no dangerous condition on its property posed by the bench Leaf sat on. Docket 28 at 4. It continues that even if the bench could be considered a dangerous condition, it did not and could not have reasonably known or had notice that it was a dangerous condition. Docket 28 at 4–7; Docket 43 at 3–5. Toward that end, Bear Country claims it was unforeseeable that someone such as Leaf would be injured by Bear Country's bench because "[t]here are no signs the bench was not working as it was intended to, that it was broken in any way, or that it was not properly maintained." Docket 28 at 6–7; Docket 43 at 4–5. The plaintiffs, on the other hand, respond that there are genuine disputes of material fact concerning

5

whether the bench was a dangerous condition on Bear Country's premises and Bear Country's knowledge of the bench's dangerous condition. Docket 37 at 4–8.

It is undisputed that the plaintiffs were invitees visiting Bear Country's property. Docket 33 ¶ 1; Docket 38 at 1. The case of *Janis v. Nash Finch Co.* is the leading authority on premises liability to invitees under a theory of negligence in South Dakota. "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Janis v. Nash Finch Co.*, 780 N.W.2d 497, 500 (S.D. 2010) (quoting *Stone v. Von Eye Farms*, 741 N.W.2d 767, 770 (S.D. 2007)). "Whether the defendant breached that duty and, in doing so, caused harm to the plaintiff are questions of fact typically reserved for the jury." *Busby v. Menard, Inc.*, No. 4:23-CV-04117-KES, 2026 WL 1815549, at *4 (D.S.D. June 24, 2026) (quoting *Long v. Smithfield Packaged Meats Corp.*, 736 F. Supp. 3d 681, 695 (D.S.D. 2024)); *Stone*, 741 N.W.2d at 770 ("This Court has repeatedly stated that questions of negligence, contributory negligence, and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." (quoting *Pierce v. City of Belle Fourche*, 624 N.W.2d 353, 356–57 (S.D. 2001))).

"The South Dakota Supreme Court has found that as a general rule, the possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for the benefit of the invitee's safety, and the possessor is liable for the breach of such duty." *Busby*, 2026 WL 1815549, at *5 (citation modified) (quoting *Janis*, 780 N.W.2d at 501). The duty a landowner

6

owes to an invitee is two-fold: "The general duty of reasonable or ordinary care that a landowner owes invitees includes the duties owed to licensees: to warn of concealed, dangerous conditions known to the landowner *and* to use ordinary care in active operations on the property." *Janis*, 780 N.W.2d at 501 (citation modified) (quoting *Mitchell v. Ankney*, 396 N.W.2d 312, 313–14 (S.D. 1986)). "The duty to warn is a subpart of the duty to keep the property reasonably safe, and the duty to keep the property reasonably safe is, in turn, a subpart of the general duty to exercise reasonable care for the benefit of others." *Id.* (citation modified) (quoting *Mitchell*, 396 N.W.2d at 314).

Regarding the broad duty of reasonable or ordinary care, "foreseeability, rather than knowledge, is the touchstone of the existence of" this duty. *Id.* at 502. Prior acts or incidents, while being potential evidence supporting foreseeability, are not required for such a finding. *See id.* at 503–04 (holding "prior incidents, whether similar or not, were properly held to constitute evidence of foreseeability and could be considered with all the other facts and circumstances relating to the issue, but were not required," and "the prior similar incidents rule contravenes the policy of preventing future harm" (citation modified) (quoting *Small v. McKennan Hosp.*, 403 N.W.2d 410, 412–13 (S.D. 1987))). "The duty to foresee a risk of harm is dependent upon all the surrounding facts and circumstances . . . . Foreseeability therefore depends on the facts of each individual case." *Id.* at 503 (citation modified) (quoting *Small*, 403 N.W.2d at 413) (citing *Small v. McKennan Hosp.*, 437 N.W.2d 194, 199 (S.D. 1989)).

7

"The requirement that a landowner know of the dangerous condition on his property limits his duty to warn, but does not constrain his more general duty to keep his property reasonably safe." *Id.* at 501–02. "The liability of a landowner to an invitee for failure to render the premises reasonably safe for an invitee, or failure to warn him of a dangerous condition on the premises, is predicated upon a landowner's superior knowledge concerning the dangers of his property." *Id.* at 502 (quoting *Mitchell*, 396 N.W.2d at 314).

"A possessor of land is subject to liability for physical harm caused to his invitees . . . if . . . he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees . . . ." *Id.* (quoting Restatement (Second) of Torts § 343 (A.L.I. 1965)). The principle of constructive knowledge has been codified by the South Dakota legislature. *See* SDCL § 17-1-4 ("Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.").

Viewing the cited record in the light most favorable to the plaintiffs, as the nonmovants, there are material issues of fact in dispute on the question whether the bench was a dangerous condition on Bear Country's premises. The bench was lightweight, and Bear Country placed it—without any attachment securing it to the ground—on concrete that had been stamped in a way that created a somewhat uneven surface and positioned its rear legs on the edge of the walkway adjacent to grass. Docket 39-2 at 2–3 (deposition of Mr. Casey,

one of the operators of Bear Country, who agreed the stamped area was not as even as the rest of the walkway); Docket 39-2 at 3–4; *see* Docket 29-1.

However, Bear Country contends that "[l]ightweight, unsecured benches are commonplace, and decorative brick is a standard walkway surface." Docket 43 at 4. It argues the plaintiffs cite "no code, standard, or industry practice requiring commercial benches to be a certain weight, bolted, or placed on perfectly level surfaces." *Id.* at 4–5. While these facts certainly go to the weight of the evidence, they do not establish an absence of material fact in dispute that would permit summary judgment in Bear Country's favor. On the contrary, the surrounding facts and circumstances, when viewed in the light most favorable to the plaintiffs, could lead a jury to a reasonable inference that the bench created a dangerous condition upon which Bear Country had a duty to render safe or warn an invitee about. *See Janis*, 780 N.W.2d at 502.

Moving to Bear Country's knowledge of a dangerous condition, the plaintiffs argue that "there is a genuine issue of material fact as to whether Bear Country had constructive notice of the danger the bench posed." Docket 37 at 7. They claim that Bear Country knew the bench was lightweight and movable and "intentionally placed the bench on an uneven decorative-brick portion of the walkway" and did not secure it to the ground. *Id.* They also note that Bear Country "knew the bench was placed for public use along the quarter-mile Wilderness Loop, including by patrons with mobility limitations." *Id.* The plaintiffs cite the record to show Bear Country's employees placed the bench in its location at the time of this accident, which was the "uneven

9

decorative-brick portion of the walkway." *Id.* (citing Docket 39-5 at 2–3). The plaintiffs also cite the record that Bear Country knew that "whether the bench could easily tip was important to customer safety." *Id.* (citing Docket 39-3 at 7–8).

In response, Bear Country argues that the "[p]laintiffs attempt to manufacture foreseeability out of facts that are not themselves dangerous." Docket 43 at 4. In its view, "unsecured benches are commonplace, and a decorative brick is a standard walkway surface." *Id.* It also argues that the lack of prior accidents due to its benches alone is enough to foreclose as a matter of law that this bench's risk of harm was foreseeable. Docket 43 at 3–4.

This Court need not determine whether Bear Country had actual notice because even if it did not have actual notice, the record sufficiently demonstrates that the risk of harm was foreseeable such that Bear Country had a duty to conduct "further investigation or inquiry." *See Small*, 403 N.W.2d at 413. While the record does not contain evidence of prior incidents, "under the prior similar incidents rule, the first victim always loses, while subsequent victims are permitted recovery. A landowner should not get one free injury on his property before he can be held liable." *Janis*, 780 N.W.2d at 504 (citation modified) (quoting *Small*, 403 N.W.2d at 412). Further, foreseeability is decided by all the facts and circumstances of a case. *Id.* Here, it was foreseeable that a lightweight bench placed on an uneven surface and near the edge of a walkway where the concrete and grass meet, without anything securing it to the ground, might involve an unreasonable risk of harm. Therefore, Bear Country "had a

10

duty to use reasonable or ordinary care to make its premises safe for its business invitees," including the plaintiffs. *See id.*

Bear Country quotes *Janis* that a "landowner is not an insurer as to the safe condition of the premises" as support that it is not in breach of its duty to invitees when one of its benches happens to tip over. Docket 43 at 5 (quoting 780 N.W.2d at 504). But whether Bear Country breached this duty owed to the plaintiffs is a question for a jury. *See Janis*, 780 N.W.2d at 504. As the South Dakota Supreme Court explained, "[a] landowner is not strictly liable to those injured on his property." *Id.* at 505. Rather, "[a] landowner owes a duty of reasonable or ordinary care to entrants on his property only when all the surrounding facts and circumstances, including the knowledge he possesses, indicate that the risk of harm was foreseeable." *Id.* at 504–05.

Because genuine issues of material fact are in dispute, Bear Country's negligence is not an issue to be decided on summary judgment.

## II.  Whether the Plaintiffs' request for punitive damages survives summary judgment.

Next, Bear Country argues that the plaintiffs' request for punitive damages must be dismissed because they have not made a prima facie showing to allow for punitive damages. Docket 43 at 7; *see* Docket 28 at 12. It claims the plaintiffs have not shown willful and wanton misconduct concerning this incident. *Id.* It continues that the plaintiffs' evidence merely demonstrates alleged negligence, which does not in and of itself rise to the level of malice required for punitive damages. *Id.* Bear Country adds that the plaintiffs "do not

11

identify evidence that [it] consciously disregarded" the risk that the bench may tip over. Docket 43 at 6.

Under South Dakota law, punitive damages are available only if authorized by statute. SDCL § 21-1-4; *see* SDCL § 21-3-2 (permitting punitive damages for breach of a noncontractual obligation if the defendant is guilty of "malice, actual or presumed"). Punitive damages may be pursued if a court finds "after a hearing and upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against." SDCL § 21-1-4.1; *see Wright v. Temple*, 956 N.W.2d 436, 454 (S.D. 2021). "Mere negligence is not equivalent to willful and wanton misconduct." *Warner ex rel. Brown v. Youth Servs. Int'l of S.D., Inc.*, 89 F. Supp. 2d 1095, 1107 (D.S.D. 2000). "Malice is an essential element of a claim for punitive damages . . . ." *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991).

> Malice sufficient to support exemplary damages may be either actual, malice in fact, or presumed, legal malice. Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts. *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968). Thus, while the person may not act out of hatred or ill-will, malice may nevertheless be imputed if the person acts willfully or wantonly to the injury of the other. *Id.* . . . Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations.

*Id.* (citation modified). The South Dakota Supreme Court has explained that when applying SDCL § 21-1-4.1, "the proponent of a punitive damages claim

12

bears a burden of demonstrating a reasonable basis to believe punitive damages are warranted." *Wright v. Temple*, 956 N.W.2d 436, 454 (S.D. 2021).

Here, the plaintiffs seek punitive damages because they claim that Bear Country "engaged in willful and wanton misconduct when it knowingly and intentionally placed an unsecured bench on an uneven surface carelessly and heedlessly in disregard of Robert Leaf's and Scott Lewis's rights and safety." Docket 5 ¶ 32. They assert that Bear Country's "deliberate disregard for the rights and safety of the thousands of business invitees that visit its premises" was "extreme and outrageous conduct" that put those "invitees at risk of injury." *Id.* ¶¶ 34–36 (accusing also that Bear Country acted with reckless indifference and malice).

A review of the record in the light most favorable to the plaintiffs reveals no evidence of actual or presumed malice on the part of Bear Country. Rather, the plaintiffs' argument recites the same excerpts from the record to oppose summary judgment on their punitive damages claim as they did to avoid summary judgment on their negligence claim. Docket 37 at 10 (referring to the evidence that Bear Country agreed whether "benches could easily tip was important to customer safety" and that Bear Country did not test how easily the benches would tip over or perform a safety review or check for whether they should be commercially used). On this record, Bear Country has shown the absence of a material issue of fact in dispute on the question whether it acted willfully, wantonly, and maliciously. Therefore, summary judgment is proper on punitive damages.

**ORDER**

Accordingly, it is hereby

ORDERED that Bear Country's motion for summary judgment, Docket 27, is granted in part and denied in part.

Dated August 5, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

14